### THE WARREN.

*District Court, S. D. New York.* November 27, 1883

1. COLLISION—OVERTAKING VESSEL—DUTY OF GIVING WAY.
    Where a collision took place in the East river between a steam ferry-boat and a steam lighter while the ferry-boat was overtaking and passing the lighter, the evidence as to the immediate cause of the collision being conflicting, *held*, that the primary cause of the collision was the fault of the ferry-boat in approaching the lighter within less than 20 yards, in violation of the state statute which required her to keep at least that distance off.
2. SAME—DUTY OF EACH VESSEL.
    In admiralty each vessel is held bound to use all reasonable vigilance and skill to avoid collision, no matter what the prior fault of the other vessel.
3. SAME—RULE 24.
    Rule 24 in effect requires each vessel to give way in the presence of immediate danger. *Held*, therefore, that the steam lighter in this case was also in fault for keeping straight on her course without giving way at all, as she might easily have done after the ferry-boat had approached within 15 or 20 feet, and was passing ahead, though somewhat crossing her bows; and, on this ground, *held*, that the lighter could recover but half his damages.

In Admiralty.
*Chas. E. Crowell*, for libelant.
*Beebe & Wilcox*, for claimants.

BROWN, J. As the libelant's steam lighter the Amelia, loaded witn 900 barrels of sugar, was coming down the East river against a strong flood-tide, about 1 P. M. of September 27, 1880, bound for pier 36, East river, the ferry-boat Warren, running from Williamsburgh to Roosevelt street, New York, overtook her and was passing on the starboard side of the Amelia. When nearly past her, the port quarter of the Warren, about 15 feet from her stern, came in collision with the starbard bow of the Amelia, causing the latter some damage, for which this suit is brought to recover compensation. The collision was near the Brooklyn shore, between Bridge and Catharine streets, at a distance variously estimated by the different witnesses of from 75 to 250 feet. Above the Catharine-street pier there is an eddy on the flood-tide, in which it is said the Amelia was running. The witnesses on each vessel claim that the other vessel gave a sheer towards the other, and each testifies that their own vessel continued straight on.

"The statute of this state requires that no steam-boat overtaking another shall pass within 20.yards. 1 Rev. St. p. *684, § 7. There was nothing in the circumstances in this case to prevent the Warren, which was the overtaking vessel, from complying with this rule. She came up abreast of the Amelia and passed along-side of her not above 50 feet off, even by the claimant's testimony, and within 15 or 20 feet, according to the testimony of the libelant. This near approach to the Amelia by the Warren, in violation of law and without excuse, was the primary cause of the collision which followed, and on that ground the Warren must be held liable.

As respects the Amelia, it is impossible to reconcile the conflicting testimony. From the whole evidence I am satisfied, however, that the Warren had nearly passed the Amelia, and that she was also approaching the latter's bows; but whether from any change of wheel by either vessel, or by which, if either, I find it impossible to determine with any certainty. It may have resulted somewhat from the currents in the river in the edge of the eddy. But, whatever the immediate cause of the collision, it did not occur until some time after the pilot-house of the Warren had passed ahead of the Amelia, and the pilot of the latter had the Warren in immediate view ahead, and when the Amelia was so near to the Warren that her captain must have been perfectly aware of the danger of continuing his own course straight on, as he says he did, without any giving way. The evidence leaves no doubt that there was abundant time for him to have given way somewhat under a starboard wheel, and that there was nothing to prevent his doing so. The statute above referred to requires the boat ahead not to be navigated so as unnecessarily to bring her within 20 yards of the one following it. Under such circumstances, although the primary fault was in the ferry-boat in passing so near, it is impossible not to hold the Amelia also responsible for not using the slightest means by giving way in her course to avert the evident danger, when the danger through such close proximity was obvious, and could have been so easily avoided. There is no rule which justifies a vessel in keeping on her course and running into a collision simply because she has the right of way, and as respects the other vessel is not bound to yield. *Crockett* v. *Norton*, 18 How. 581. By rule 24 (Rev. St. § 4233) each vessel, in the presence of immediate danger, is bound to yield. In courts of admiralty both vessels are held bound to exercise all reasonable vigilance and skill to avert disaster and the loss of property. Any vessel which fails to do this, no matter how much greater may be the fault of the other vessel, is also held in the wrong for neglect of her own duty; and, if she suffer loss, can recover but half her damages. *The Vim*, 12 FED. REP. 906, and cases cited; *The Mary Ann*, 11 FED. REP. 336.

Decree for the libelant for half her damages, with costs, with a reference to compute the amount if the parties do not agree.